IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| SHAD'S INC., d/b/a SHAD'S BAR, and <br> L.L. DRAKE, a/k/a MELISSA L. DRAKE <br>   and d/b/a SHAD'S BAR, <br><br> Plaintiffs, <br><br> v. <br><br> CRAIG KEY, <br><br> Defendant, <br><br> and <br><br> CONTINENTAL CASUALTY <br>   COMPANY, a/k/a CNA LAWYER'S <br>   PROFESSIONAL LIABILITY <br>   INSURANCE COMPANY, <br><br> Garnishee. | Case No. CIV-17-1031-SLP |

**O R D E R**

Before the Court is Garnishee Continental Casualty Company's Motion for Judgment on the Pleadings [Doc. No. 31], filed pursuant to Federal Rule of Civil Procedure 12(c). It is at issue. *See* Resp., Doc. No. 39; Reply, Doc. No. 42.

This case is a tale of five lawsuits. First is the action filed by J&J Sports Productions against Plaintiff Shad's Inc d/b/a Shad's Bar in this Court and presided over by Judge Cauthron. Second is the action filed by Shad's Bar against its counsel in that lawsuit—Defendant Craig Key—in the District Court for Oklahoma County. Third is the current lawsuit, a garnishment action. Technically, it is a continuation of the second suit. But because the adverse parties are now Shad's Bar and Continental Casualty (not Shad's Bar

and Mr. Key), and it is now in this Court instead of in state court—it is essentially a different case with different issues.[1]

Fourth is a lawsuit filed by various persons against Brian and Dana Jones in the District Court for Payne County. Finally, there is an action filed by the Joneses against their counsel in the fourth action—again, Mr. Key—which also took place in the District Court for Payne County. Neither Shad's Bar nor J&J Sports had any involvement with the Joneses' lawsuits. The Court will address each of the relevant actions in turn.

## I. Background[2]

Shad's Bar was sued in 2011 by J&J Sports in a case presided over by Judge Cauthron of this Court. The Court refers to this first matter as the "Underlying Shad's Suit." Shad's Bar hired Mr. Key to represent it in that case, paying him $4,000. But Mr. Key did not enter his appearance, did not answer or move against J&J Sports's complaint, and did not respond to J&J Sports's October 2012 motion for default judgment. A default

---

[1] Plaintiff L.L. Drake (a/k/a Melissa Drake) is now a nominal party who is not actively participating in this litigation. *See* Am. Compl. ¶ 2, Doc. No. 27. Accordingly, references herein are to Shad's Bar only, though almost all actions by or to Shad's Bar in the pre-garnishment period described herein were by or to both Shad's Bar and Ms. Drake.

[2] The facts herein are taken from Shad's Bar's Amended Complaint [Doc. No. 27] and accepted as true for the purpose of deciding Continental Casualty's Rule 12(c) motion. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Zurich Am. Ins. Co. v. Good to Go, LLC*, No. CIV-16-1067-F, 2018 WL 8333413, at *4-5 (W.D. Okla. Jan. 2, 2018). Shad's Bar's assertion that Continental Casualty's motion cannot be granted without converting it to one for summary judgment because there are factual disputes in the pleadings (*see* Resp. 1, Doc. No. 39) is incorrect because the Court has accepted as true all factual matters pleaded by Shad's Bar in its Amended Complaint [Doc. No. 27].

judgment was issued against Shad's Bar, and a subsequent motion to vacate the default judgment filed by new counsel appearing on behalf of Shad's Bar was denied.

Mr. Key was insured for professional liability by an insurance policy issued by Continental Casualty for the policy term of February 1, 2013, through February 1, 2014.[3] The insurance policy is a claims made policy—i.e., "it applies only to those claims that [were] both first made against [Mr. Key] and reported in writing to [Continental Casualty] during the policy period." Policy at CCC 000014, Doc. No. 17-1 (capitalization omitted). The insuring clause of the policy provides coverage as follows:

> [Continental Casualty] agrees to pay on behalf of [Mr. Key] all sums in excess of the deductible that [Mr. Key] shall become legally obligated to pay

---

[3] Although not attached to the Amended Complaint, the insurance policy issued by Continental Casualty to Mr. Key is referred to in and central to Shad's Bar's claims therein, so the Court may consider it. *See GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384-85 (10th Cir. 1997). Shad's Bar and Continental Casualty have stipulated that an accurate copy of the insurance policy was submitted to the Court at Document No. 17-1. *See* Jt. Status Rep. & Disc. Plan ¶ 3(6), Doc. No. 17. In contrast, the Court has not considered the assertions included in Continental Casualty's Answer to Shad's Bar's Amended Complaint [Doc. No. 29] or the exhibits thereto [Doc. Nos. 29-1 to 29-4] except for (i) the Petition filed by Shad's Bar against Mr. Key in the Shad's Malpractice Suit (ECF pages 6-8 of Document No. 29-1) and (ii) the Petition for Legal Negligence filed by the Joneses against Mr. Key in the Joneses Malpractice Suit (ECF pages 3-5 of Document No. 29-2)—both of which the Court finds to have been referred to in and central to the assertions made by Shad's Bar in the Amended Complaint [Doc. No. 27]. Nor has the Court considered the exhibits to Shad's Bar's response brief [Doc. Nos. 39-1 to 39-21] except as otherwise noted herein (i.e., Document No. 39-1, which is also filed as part of Document No. 29-1, and Document No. 39-14, which is also filed as part of Document No. 29-2)—both discussed *supra*. That both Shad's Bar and Continental Casualty have submitted the same state-court filings to the Court indicates that the authenticity of these documents is undisputed. Were the Court to consider the materials submitted by Shad's Bar with its response brief and, accordingly, convert the instant motion to one for summary judgment under Rule 12(d), Continental Casualty would still prevail. Nothing in the evidentiary materials submitted by Shad's Bar shows the two insurance claims at issue to be related claims within the meaning of the insurance policy issued by Continental Casualty to Mr. Key.

3

as damages and claim expenses because of a claim that is both first made against [Mr. Key] and reported in writing to [Continental Casualty] during the policy period by reason of an act or omission in the performance of legal services by [Mr. Key] or by any person for whom [Mr. Key] is legally liable, provided that:

1. [Mr. Key did not give] notice to a prior insurer of such claim or a related claim;
2. [Mr. Key did not give] notice to a prior insurer of any such act or omission or related act or omission;
3. prior to the date [Mr. Key] first becomes an Insured under this Policy or became an Insured under the first policy issued by [Continental Casualty] (or its subsidiary or affiliated insurers) to [him], whichever is earlier, . . . [Mr. Key has not] had a basis to believe that any such act or omission, or related act or omission, might reasonably be expected to be the basis of such claim;
4. there is no other policy, whether primary, contributory, excess, contingent or otherwise, which provides insurance to [Mr. Key] for the claim based on or arising out of an act or omission in the performance of legal services by [him] or by any person for whom [he] is legally liable . . . . [and]
5. the act or omission occurred on or after 02/01/2007.

*Id.* (emphasis omitted) (as amended by the Retroactive Exclusion Clause Endorsement located at CCC 000005). The insurance policy further provides:

> [Mr. Key], as a condition precedent to the obligations of [Continental Casualty] under this Policy, shall as soon as reasonably possible after learning of a Claim give written notice to [Continental Casualty] during the policy period of such claim. [Continental Casualty] agrees that [Mr. Key] may have up to, but not to exceed, 60 days after the Policy expiration to report a claim made against [him] during the policy period if the reporting of such claim is as soon as reasonably possible.

*Id.* at CCC 000022 (emphasis omitted).

In April 2013, Mr. Key resigned from the Oklahoma Bar Association while disciplinary proceedings were pending against him based on alleged "misappropriation of client funds; failure to provide accounting of settlement funds; failure to communicate with clients; conflict of interest; and [commission of] forgery and embezzlement." *Oklahoma*

4

*ex rel. Okla. Bar Ass'n v. Key*, 2013 OK 32, ¶ 1, 301 P.3d 416, 416. In its order approving Mr. Key's voluntary resignation from the practice of law, the Oklahoma Supreme Court ordered Mr. Key to "notify all of his clients, if any, having legal business pending with him within 20 days"—i.e., by May 26, 2013—"of his inability to represent them and of the necessity for promptly retaining new counsel." *Id.* ¶ 2, 301 P.3d at 418. Mr. Key did not notify Shad's Bar.

Thus, in October 2013, Shad's Bar sued Mr. Key in the District Court for Oklahoma County for legal malpractice that it claimed occurred in the Underlying Shad's Suit. The Court refers to the pre-garnishment period of this second matter as the "Shad's Malpractice Suit." Although Mr. Key was served with the malpractice petition, he did not appear timely and default judgment was entered against him by the state court. After a hearing on the amount of damages to be awarded, the District Court for Oklahoma County entered judgment in favor of Shad's Bar against Mr. Key in the amount of $460,487.49. Post-judgment, Shad's Bar served a garnishment affidavit on Continental Casualty seeking payment by Continental Casualty of the judgment that was owed by Mr. Key to Shad's Bar. Continental Casualty then removed the garnishment portion of the lawsuit to this Court (originating, post-garnishment, the third matter referred to *supra*).

Mr. Key's lack of attention to his clients was not limited to Shad's Bar. He was also hired by Brian and Dana Jones for a case then-pending against them in the District Court for Payne County. The Court refers to this fourth matter as the "Underlying Joneses Suit." Mr. Key failed to respond to a summary judgment motion and failed to appear for a scheduled hearing in December 2012 in the Underlying Joneses Suit. In addition, in March

5

2013, Mr. Key withdrew an application to vacate a summary judgment order in the Underlying Jones Suit without discussing the same with the Joneses.

The Joneses sued Mr. Key in September 2013 for legal malpractice after he failed to notify them of his inability to practice law, despite the Oklahoma Supreme Court's order for him to do so. The Court refers to this fifth (and last) matter as the "Joneses Malpractice Suit." Mr. Key reported the Joneses' lawsuit against him to Continental Casualty in January 2014 (during the policy period for the insurance policy at issue), and Continental Casualty subsequently determined that his insurance claim regarding the Joneses Malpractice Suit was covered under the insurance policy at issue. The Court refers to the insurance claim made by Mr. Key to Continental Casualty based on the Jones Malpractice Suit as the Jones Insurance Claim. The Joneses Malpractice Suite was subsequently dismissed, presumably because a settlement was reached in the matter.

Around the same time that Mr. Key made the Joneses Insurance Claim to Continental Casualty—in January 2014—Mr. Key informed Shad's Bar's current counsel that he had a lawyer's liability insurance policy and provided Shad's Bar's counsel with contact information for Pearl Insurance (apparently an insurance agent or broker through which Mr. Key obtained the insurance policy issued to him by Continental Casualty). More than three months later—in May 2014—Shad's Bar made a claim on the insurance policy at issue in this litigation via Pearl Insurance. The Court refers to the insurance claim made by Shad's Bar based on the Shad's Malpractice Suit as the Shad's Insurance Claim. Continental Casualty disclaimed coverage for the Shad's Insurance Claim.

Shad's Bar claims that the Shad's Insurance Claim submitted to Continental Casualty in May 2014 and the Joneses Insurance Claim submitted to Continental Casualty in January 2014 are "related claims" under the insurance policy. On that subject, the insurance policy states:

> If related claims are subsequently made against [Mr. Key] and reported to [Continental Casualty], all such related claims, whenever made, shall be considered a single claim first made and reported to [Continental Casualty] within the policy period in which the earliest of the related claims was first made and reported to [Continental Casualty].

Policy at CCC 000015, Doc. No. 17-1 (emphasis omitted). The insurance policy defines "related claims" as "all claims arising out of a single act or omission or arising out of related acts or omissions in the rendering of legal services." *Id.* at CCC 000021 (emphasis omitted). And "related acts or omissions" are defined as "all acts or omissions in the rendering of legal services that are temporally, logically or casually connected by any common fact, circumstance, situation, transaction, event, advice or decision." *Id.* (emphasis omitted). Finally, a "[c]laim means a demand, including the service of suit or the institution of any alternative dispute resolution proceeding, received by [Mr. Key] for money or services arising out of an act or omission, including personal injury, in the rendering of or failure to render legal services." *Id.* at CCC 000017 (emphasis and quotation marks omitted).

In the Amended Complaint [Doc. No. 27], Shad's Bar asserts claims for declaratory relief and garnishment against Continental Casualty. Continental Casualty has moved for judgment on the pleadings pursuant to Rule 12(c), and Shad's Bar has counter-moved for summary judgment in its favor under Rules 12(d) and 56(f). The Court declines to convert

7

Continental Casualty's motion to one for summary judgment under Rule 12(d). *See Lowe v. Town of Fairland*, 143 F.3d 1378, 1381 (10th Cir. 1998) ("[C]ourts have broad discretion in determining whether or not to accept materials beyond the pleadings."). *See supra* notes 2-3.

## II. Discussion and analysis

Shad's Bar does not allege that either it or Mr. Key gave notice to Continental Casualty of the Shad's Malpractice Suit against Mr. Key and the resulting Shad's Insurance Claim until May 14, 2014—more than three months after the policy period for the Continental Casualty insurance policy issued to Mr. Key expired. And whether the Shad's Insurance Claim was reported to Continental Casualty during the policy period (or during the 60 days thereafter when claims could still be reported to Continental Casualty) is the key determination to be reached in this lawsuit because a claims made insurance policy is at issue. As summarized by the Oklahoma Court of Civil Appeals:

> In a claims made policy, coverage is triggered when an insured becomes aware of either claims against the insured or occurrences that might give rise to a claim against the insured and notifies the insurer or such a claim or occurrence during the policy period. In claims made policies, the date of notice is paramount—both the date the insured has notice of a claim against it and the date the insured forwards notice of that claim to the insurer. Because of the importance of the date of notice in a claims made policy, it has been held that the rule that late notice is acceptable where the insurer has not been prejudiced is inapplicable to claims made policies.

*Assoc. of Cty. Comm'rs of Okla. v. Nat'l Am. Ins. Co.*, 2005 OK CIV APP 44, ¶ 16, 116 P.3d 206, 211 (citations and footnote omitted); *see also id.* at 211 n.8 (distinguishing occurrence policies from claims made policies).

8

Absent some policy provision requiring that the Shad's Insurance Claim be treated as if it was reported to Continental Casualty during the policy period, no coverage exists for the Shad's Insurance Claim under the insurance policy. Shad's Bar argues that such a policy provision exists in the insurance policy's "[m]ultiple insureds, claims and claimants" provision. Policy at CCC 000015, Doc. No. 17-1 (emphasis omitted). Thus, the only way that coverage can exist for the Shad's Insurance Claim is if it is a related claim to the Joneses Insurance Claim.[4] *Cf. Indep. Sch. Dist. No. 1 v. Jackson*, 608 P.2d 1153, 1155-56 (Okla. 1980) (indicating, in a case not involving allegedly related claims, that the lack of notice to the insurer of a lawsuit precluded the insurer's liability after a default judgment was entered against its insured).

The Court therefore turns to the language of the insurance policy provision at issue. "Under Oklahoma law, an unambiguous insurance policy is interpreted according to the plain meaning of the language in the policy. Insurance contracts are ambiguous only if they are susceptible to two constructions." *VBF, Inc. v. Chubb Grp. of Ins. Cos.*, 263 F.3d

---

[4] Shad's Bar believes that Continental Casualty also determined that coverage existed for other malpractice claims asserted against Mr. Key during the policy period, including one by Deaconess Health System, LLC. No information has been provided to the Court to indicate that these other malpractice claims against Mr. Key would be treated different than the Joneses Malpractice Suit and the corresponding Joneses Insurance Claim, and the Court does not consider them further herein. Certainly, nothing is included in the Amended Complaint sufficient to state a claim for coverage based on insurance claims involving other, undefined and unknown malpractice actions by Mr. Key. Based on the allegations included in the Amended Complaint, attempting to tie coverage under the insurance policy for the Shad's Insurance Claim to these other malpractice claims against Mr. Key (including the claim made by Deaconess Health) would fail for the same reason that Shad's Bar's attempt to tie coverage under the insurance policy for the Shad's Insurance Claim to the Joneses Insurance Claim fails.

1226, 1230-31 (10th Cir. 2001) (quotation marks and citation omitted). Here, no such ambiguity exists regarding the related claims provision of the insurance policy. *Cf. Berry & Murphy, P.C. v. Carolina Cas. Ins. Co.*, 586 F.3d 803, 809-10 (10th Cir. 2009) (finding very similar policy language, though for a related wrongful acts provision instead of a related claims provision, to be unambiguous); *Prof'l Sols. Ins. Co. v. Mohrlang*, No. 07-cv-2481-PAB-KLM, 2009 WL 321706, at *9 (D. Colo. Feb. 10, 2009) (finding very similar policy language for a related claims provision to be unambiguous).

The Continental Casualty insurance policy provides that "related claims" are "considered a single claim first made and reported . . . within the policy period in which the earliest of the related claims was first made and reported to [Continental Casualty]." Policy at CCC 000015, Doc. No. 17-1 (emphasis omitted). The insurance policy defines "related claims" as "all claims arising out of a single act or omission or arising out of related acts or omissions in the rendering of legal services." *Id.* at CCC 000021 (emphasis omitted). There is no dispute in this case that the Shad's Insurance Claim and the Joneses Insurance Claim are both "claims" within the insurance policy's definition for that term. *Id.* (emphasis omitted); *see also id.* at CCC 000017. And Shad's Bar does not assert that its insurance claim and the Joneses Insurance Claim "aris[e] out of a single act or omission" by Mr. Key. *Id.* at CCC 000021. So, the Shad's Insurance Claim and the Joneses Insurance Claim are related only if they "aris[e] out of related acts or omissions in the rendering of legal services." *Id.* (emphasis omitted).

"[R]elated acts or omissions" are defined by the insurance policy as "all acts or omissions in the rendering of legal services that are temporally, logically or casually

10

connected by any common fact, circumstance, situation, transaction, event, advice or decision." *Id.* (emphasis omitted). Shad's Bar argues first for a temporal connection based on two "common fact[s], circumstance[s], . . . [or] event[s]" by Mr. Key—his failure to respond to a dispositive motion in the Underlying Shad's Suit and his failure to respond to a dispositive motion in the Underlying Joneses Suit, both in or near October 2012. *Id.* "'[T]emporally connected' means connected to a particular time or through the sequence of time." *Mohrlang*, 2009 WL 321706, at *10 (citation omitted); *see Berry & Murphy*, 586 F.3d at 811-12 (expressing approval of the *Mohrlang* definition). While Mr. Key's omissions may be temporally related, they are not connected by common facts, circumstances, or events.[5] The malpractice committed by Mr. Key occurred in two different cases for two different clients in two different courts. Shad's Bar does not allege any sort of common reason for Mr. Key's failures to respond to dispositive motions—such as an illness, a common bad intent, or another common modus operandi for his actions—or a common business practice by which his omissions occurred—e.g., malfunctioning

---

[5] That a temporal connection exists is not as apparent as Shad's Bar asserts. Shad's Bar states that the failures to respond to dispositive motions both occurred in October 2012, though that is not fully clear from the Amended Complaint. And the default judgement entered in the Underlying Joneses Suit appears to have been based also, at least in part, on Mr. Key's failure to appear at the December 2012 hearing scheduled in that case—as well as, possibly, his withdrawal of the application to vacate the summary judgment order entered in the Underlying Joneses Suit. The Tenth Circuit has affirmed the holding that passage of only three weeks between acts was enough for them not to be temporally connected. *See Prof'l Sols. Ins. Co. v. Mohrlang*, 363 F. App'x 650, 652 (10th Cir. 2010) (unpublished). The Court will assume temporal connectedness in this case because the Court finds no common facts, circumstances, or events to exist regardless of its temporal connection determination. Nor does Shad's Bar allege a logical or causal connection between Mr. Key's failures to respond to dispositive motions in the Underlying Shad's Suit and in the Underlying Joneses Suit.

11

docketing software that miscalculated dispositive motion response deadlines or a general policy of not responding to dispositive motions. *Cf. Cont'l Cas. Co. v. Howard Hoffman & Assocs.*, 955 N.E.2d 151, 167 (Ill. App. Ct. 2011) (finding claims of embezzlement from multiple client accounts to be related, unlike here, when they "had common ties and involved the same modus operandi," as well as being part of a complex scheme used to cover up the embezzlement actions which were for funds used to cover gambling debts (quotation marks omitted)). In addition, the failure in the Underlying Shad's Suit was limited to a failure to file a response brief while the failure in the Underlying Joneses Suit included both the failure to file a response brief and the failure to appear at the hearing at which the dispositive motion was to be argued, as well as Mr. Key's withdrawal of the application to vacate the summary judgment order without permission from the Joneses for him to do so. *Cf. Bowman, Heintz, Boscia & Vician, P.C. v. Valiant Ins. Co.*, 35 F. Supp. 3d 1015, 1026-27 (N.D. Ind. 2014) (applying a related claims provision to find that "separate lawsuits, while dealing with the same or similar underlying events, did not all arise from related acts or omissions in the rendering of legal services" (emphasis and quotation marks omitted)). Finally, no viable commonality exists between the pleaded facts of the Shad's Insurance Claim and the pleaded facts of the Joneses Insurance Claim, differentiating this case from those cited by Shad's Bar. *See* Resp. 19-20, Doc. No. 39.

The Court also agrees with Continental Casualty's assertion that accepting Shad's Bar's argument (that the Shad's Insurance Claim and the Joneses Insurance Claim are related claims due to Mr. Key's failure to respond to dispositive motions in both the Underlying Shad's Suit and in the Underlying Joneses Suit) would fail to recognize and

12

honor the way that the claims made insurance policy is intended to operate. In a claims made policy, "[c]lear notice of a claim or occurrence during the policy period is crucial, because allowing actual notice beyond the policy period would constitute an unbargained-for expansion of coverage, gratis, resulting in the insurance company's exposure to a risk substantially broader than that expressly insured against in the policy." *LaForge v. Am. Cas. Co.*, 37 F.3d 580, 583 (10th Cir. 1994) (quotation marks and citation omitted). The notice requirement of a claims made policy is intended to "allow an insurer to close its books on a policy at the expiration date and thus attain a level of predictability unattainable under standard occurrence policies." *Id.* (quotation marks and citation omitted). In turn, the policy cost to an insured is reduced. *See id.* (citing *FDIC v. St. Paul Fire & Marine Ins. Co.*, 993 F.2d 155, 158 (8th Cir. 1993)).

Here, Shad's Bar does not allege anything indicating that Continental Casualty would have had any reason to expect the Shad's Insurance Claim based on the malpractice alleged to have occurred in the Joneses Malpractice Suit and based on Continental Casualty's receipt of the Joneses Insurance Claim. Finding that the Shad's Insurance Claim and the Joneses Insurance Claim are related claims within the meaning of the insurance policy would mean that Continental Casualty should not have closed its books regarding the insurance policy at the expiration of the policy period despite there being no reason (based on the allegations included by Shad's Bar in the Amended Complaint) for the insurer to know its books should remain open. *See Bowman, Heitz*, 35 F. Supp. 3d at 1026-27.

Shad's Bar next argues for a logical connection based on two "common fact[s], circumstance[s], . . . [or] event[s]" by Mr. Key—his failure to notify Shad's Bar of his inability to continue practicing law in Oklahoma after the Oklahoma Supreme Court's Order Approving Resignation and his failure to notify the Joneses of his inability to continue practicing law in Oklahoma after the Oklahoma Supreme Court's Order Approving Resignation. Policy at CCC 000021, Doc. No. 17-1. "'[L]ogically connected' means connected by an inevitable or predictable interrelation or sequence of events Therefore, for two things to be logically connected, one must attend or flow from the other in an inevitable or predictable way." *Mohrlang*, 2009 WL 321706, at *11 (citation omitted); *see Berry & Murphy*, 586 F.3d at 811-12 (expressing approval of the *Mohrlang* definition). Here, Shad's Bar does not allege that Mr. Key's actions in the Underlying Shad's Suit "attend[ed] or flow[ed] from" his actions in the Underlying Joneses Suit, or vice versa. *Mohrlang*, 2009 WL 321706, at *11. Nor can Mr. Key's malpractice acts in the Underlying Shad's Suit have attended or flown from the Oklahoma Supreme Court's Order Approving Resignation. That order was entered in April 2013 but the omissions by Mr. Key giving rise to the Shad's Insurance Claim and to the Joneses Insurance Claim occurred months earlier—in or around October 2012 (and, for the Joneses Insurance Claim, through March 2013). *See supra*. The latter-in-time decision by the state supreme court cannot have logically led to the former-in-time omissions by Mr. Key.

All told, the Court finds the relevant portions of the insurance policy issued by Continental Casualty to Mr. Key to be unambiguous, and it further determines that Shad's Bar has not alleged any facts which would make the Shad's Insurance Claim and the

Joneses Insurance Claim related claims within the meaning of the insurance policy. Accordingly, because it is undisputed that the Shad's Insurance Claim—but for its possible related status to the Joneses Insurance Claim—was not made to Continental Casualty during the policy period, no coverage for the Shad's Insurance Claim exists from Continental Casualty under the insurance policy issued to Mr. Key, and Shad's Bar cannot collect in garnishment from Continental Casualty.

### III. Conclusion

IT IS THEREFORE ORDERED that Garnishee Continental Casualty Company's Motion for Judgment on the Pleadings [Doc. No. 31] is GRANTED as set forth herein. Shad's Bar's cross-motion for summary judgment is DENIED as set forth herein. A separate judgment will be entered contemporaneous herewith.

IT IS SO ORDERED this 10th day of July, 2019.

SCOTT L. PALK
UNITED STATES DISTRICT JUDGE